UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

RAFAEL THEN,

        *Petitioner*,

                                       **MEMORANDUM AND ORDER**

        *-against-*                 19-CV-1618(KAM)

WILLIAM F. KEYSER,

        *Respondent*.

---------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

Petitioner Rafael Then ("Petitioner" or "Mr. Then"), proceeding *pro se,* filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction in New York state court for robbery in the first degree and robbery in the second degree. (*See generally* ECF No. 1, Petition for Writ of *Habeas Corpus* ("Pet.").) Mr. Then asserts that his constitutional right to a fair trial was violated for two reasons: (1) he was forced to wear prison-issued orange pants for part of *voir dire* and jury selection; and (2) the state trial court admitted prejudicial testimony from his ex-girlfriend, who testified that she frequently observed Mr. Then with a gun around the time of the robbery. For the reasons herein, Mr. Then's petition is respectfully DENIED in its entirety.

## Background

Mr. Then was convicted in 2012 of two counts of robbery following a jury trial. (ECF No. 7, Affidavit and Memorandum of Law in Opposition to Petition ("Opp. Aff." and "Opp. Mem."), ¶¶ 6-7.) As a previous violent felony offender, he was sentenced to concurrent terms of imprisonment of twenty-three years for the first-degree robbery conviction and twelve years for the second-degree robbery conviction, with a five-year term of post-release supervision to follow. (*Id.* ¶ 7.)

### I.   Commission of the Crime

According to the testimony at trial, on October 15, 2006, Mr. Then pointed a gun at an employee of the Baron Auto Mall car dealership in Queens County, New York, and demanded the keys to a black 2003 Lexus GS 300 automobile. (*Id.* ¶ 2.) On October 27, 2006, police discovered the stolen automobile near 173rd Street and Clay Avenue in Bronx County, New York. (State Court Record, Trial Transcript ("Tr."),[1] at 73.) Police watched the vehicle, and arrested Mr. Then after witnessing him unlock and enter it. (Opp. Aff. ¶ 2.) Police recovered the keys to the stolen vehicle in Mr. Then's possession. (*Id.*) Mr. Then

---

[1] The full record of Petitioner's state court proceedings was filed by Respondent as seven separate documents. (*See* ECF Nos. 8, 8-1, 8-2, 8-3, 8-4, 8-5, and 8-6.) Throughout this Memorandum and Order, citations to the transcripts of those proceedings cite the internal page numbers of the particular transcript, not the ECF page number that appears on the as-filed version.

was indicted on charges of robbery in the first degree, New York Penal Law § 160.15[4], and robbery in the second degree, New York Penal Law § 160.10[3], and ultimately went to trial on those charges in the Queens County Supreme Court in May of 2012. (*Id.* ¶ 3.)

## II.  Jury Selection

Prior to the start of jury selection, Mr. Then, who was using a wheelchair at the time due to an injury, informed the court that he was forced to remain in the "bullpen" at the courthouse for several days, and that he was not afforded an opportunity to sleep in a bed, make a phone call, shower, or change clothes.  (State Court Record, May 17, 2012 Transcript ("May 17 Tr."), at 30-31.)  Mr. Then said he was "told to basically put on orange pants and come to court . . ., but when [he] [got] [t]here [he] [would be] able to change into clothes . . . ."  (*Id.* at 31.)  However, Mr. Then did not "have any clothes because [he] [was] [un]able to get a visit."  (*Id.*)  Mr. Then argued that he was not presentable for the jury that was going to be selected, and that he "look[ed] crazy" "in orange pants," and he asked the court for a postponement of proceedings until the following Monday.  (*Id.* at 32.)  The court denied his request, noting that "99 percent of the people who [were] [t]here [that day] [would not] be [t]here" for trial. (*Id.*)

3

Mr. Then persisted in his objection to having to wear the orange pants, but the court reiterated that it was acceptable for him to do so for a portion of jury selection, so long as Mr. Then was seated in the furthest possible position from the prospective jurors, where his wheelchair would be pushed under the table far enough so that the prospective jurors could not see his pants. (*Id.* at 38.) Mr. Then's counsel also noted his objection to this ruling, and likewise requested an adjournment to allow Mr. Then to make himself presentable. (*Id.* at 39.) The court, noting that Mr. Then's case was "one of the oldest cases in" the courthouse, declined to adjourn jury selection. (*Id.* at 39-40.) The court proceeded with jury selection for the remainder of the afternoon. (*Id.*) Petitioner does not contend that he was required to wear prison-issued clothing at any other proceeding, other than during the first day of jury selection, which began after lunch and continued until the end of the day. (*See* Pet. at 5.)

## III. Trial and Sentence

At trial, without objection from Petitioner, the prosecution elicited testimony from Mr. Then's girlfriend at the time of the robbery, Shyrlen Zavala ("Ms. Zavala"), that she observed Mr. Then with a gun during the month of October 2006, and a black Lexus automobile a few days after the robbery occurred. (*See* Tr. at 103-108.) Prior to trial, defense

4

counsel had opposed the introduction of her testimony regarding Mr. Then's possession of the vehicle on the ground that it was overly prejudicial.  (*See* State Court Record, May 18, 2012 Transcript ("May 18 Tr."), at 162-63; May 17 Tr. at 27.)  The court allowed Ms. Zavala's testimony.  (*Id.*)  Ms. Zavala testified that she first observed Mr. Then with the black Lexus approximately a week and a half before his arrest in Bronx County on October 27, 2006, and that she observed him with a gun "every time" she was with him starting on October 4, 2006.  (*Id.* at 103-06.)  Furthermore, over Mr. Then's pre-trial opposition, the court allowed the police officers who arrested him to testify that they found a gun in his possession upon his arrest. (*Id.* at 162-63; *see* May 17 Tr. at 20, 26-27.)

In addition to testimony from Ms. Zavala and from the police officers, Shelton Phillips ("Mr. Phillips") testified at trial that he was working at the Baron Auto Dealership on October 15, 2006, when the Lexus was stolen.  (Tr. at 26-33.) Mr. Phillips identified Mr. Then as the person who pointed a gun at him and demanded the keys to the Lexus.  (*Id.* at 33.)

Several other police officers also testified at trial. Police officer Ankur Joshi ("Officer Joshi") testified that he responded to a call at the Baron Auto Dealership on the date of the robbery.  (*Id.* at 67-68.)  Officer Joshi said that he recorded the make and model of the stolen vehicle, as well as

the Vehicle Identification Number, and a description of the robber. (*Id.* at 69-70.)   Detective Victor Herrera testified about reviewing surveillance video footage at the Baron Auto Mall that showed the robber pointing a gun at Mr. Phillips, and taking the car. (*Id.* at 135-48.)   Retired police officer Brendan Sullivan testified that he logged the car into evidence, and he confirmed the make and Vehicle Identification Number. (*Id.* at 170).

The jury convicted Mr. Then of first-degree robbery and second-degree robbery on May 23, 2012.   On June 7, 2012, Mr. Then was sentenced to concurrent sentences of twenty-three years (for first-degree robbery) and twelve years (for second-degree robbery), along with a five-year term of post-release supervision.

## IV.  Procedural History

Mr. Then appealed his conviction and sentence to the Appellate Division, Second Department, arguing that: (1) he was denied his right to a fair trial because he was made to wear orange pants for part of *voir dire* and jury selection; (2) the trial court erred when it admitted testimony from his ex-girlfriend regarding her observance of Mr. Then with a gun; (3) the prosecutor's summation deprived him of a fair trial when he suggested that Mr. Then was the cause of the years-long delay between the robbery and the trial; and (4) his sentence was

excessive.  (Opp. Aff. ¶ 8.)  The Appellate Division, Second Department affirmed his conviction and sentence.  *See generally People v. Then*, 128 A.D.3d 864 (N.Y. App. Div. 2015).

Mr. Then was granted permission to appeal to the New York Court of Appeals, and through assigned counsel, Mr. Then raised the issue of his orange prison pants during jury selection.  (Opp. Aff. ¶ 11.)  With leave of the Court of Appeals, he subsequently filed a *pro se* supplemental brief raising the issue of the trial court's admission of Ms. Zavala's testimony regarding the gun.  (*Id.*)  The Court of Appeals affirmed Mr. Then's conviction on February 9, 2017.  *See generally People v. Then*, 28 N.Y.3d 1170 (N.Y. 2017).  The Court of Appeals held that "there [was] no evidence that [Petitioner's] orange correctional pants were visible to the jury[,] and the clothing that was visible to the jury was clearly not identifiable as correctional garb."  *Id*. at 1173. In addition, the Court of Appeals found that Mr. Then's argument regarding the admission of the testimony of Ms. Zavala, regarding her observation of Mr. Then with a gun, was unpreserved for appellate review.  *Id.*

On February 6, 2018, Mr. Then, acting *pro se*, filed a *coram nobis* petition, arguing that his appellate counsel was ineffective.  (Opp. Aff. ¶ 13.)  The Appellate Division denied the application on September 12, 2018.  (*Id.* ¶ 14.)  Mr. Then

7

sought leave to appeal the denial to the Court of Appeals, and the Court of Appeals denied his request on January 7, 2019. (*Id.* ¶ 15.)

Mr. Then timely filed the instant petition with this court on March 15, 2019.  Mr. Then asserts the same two grounds for relief that he attempted to raise before the Court of Appeals during his direct appeal: (1) he was denied his right to a fair trial because he was required to wear orange pants at the start of jury selection; and (2) the trial court erred in admitting testimony from Ms. Zavala regarding her observation of Mr. Then with a gun around the time of the robbery.  Respondent opposed the petition (ECF No. 7, Opp. Mem.), and Petitioner filed a reply (ECF No. 13, Petitioner's Affidavit in Reply to Opposition to Petition; ECF No. 14, Memorandum of Law in Reply to Opposition to Petition ("Reply")).

## Legal Standard

Pursuant to 28 U.S.C. § 2254 ("Section 2254"), a district court shall issue a writ of *habeas corpus* to an individual in state custody "only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States."  28 U.S.C. § 2254(a).  A district court may only issue such a writ if the state court adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Lindstadt v. Keane*, 239 F.3d 191, 198 (2d Cir. 2001).

In order to find that a state court adjudication was "contrary to" a United States Supreme Court holding, the federal *habeas* court must conclude that the state court either arrived at a conclusion that was the "opposite" of the conclusion reached by the Supreme Court on a question of law, or "decide[d] a case differently than th[e Supreme] Court has on a materially indistinguishable set of facts." *Williams v. Taylor,* 529 U.S. 362, 412–13 (2000).  In order to hold that the state court's adjudication constituted "an unreasonable application of" a Supreme Court holding, the federal district court must conclude that "the state court identifie[d] the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applie[d] the principle to the facts of the prisoner's case." *Id.* at 413.  "[T]his standard is difficult to meet . . . because it was meant to be." *Harrington v. Richter,* 562 U.S. 86, 102 (2011).  "[F]ederal *habeas* relief functions . . . not as a means of error correction," but rather "as a guard against extreme malfunctions in the state criminal justice systems." *Greene v. Fisher,* 565 U.S. 34, 43 (2011).

9

In reviewing the instant petition, the court is mindful that Petitioner is proceeding *pro se*, and thus reviews the petition "with a lenient eye." *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and a '*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (*quoting Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Therefore, the court interprets the petition as raising the strongest arguments it suggests.  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Martin v. United States*, 834 F. Supp. 2d 115, 119 (E.D.N.Y. 2011).

## Discussion

### I.   Exhaustion of Ground Two (Admission of Ms. Zavala's Trial Testimony Regarding the Gun)

Respondent argues that Petitioner only exhausted his first asserted ground for relief, regarding the orange prison pants, but failed to exhaust the admission of Ms. Zavala's testimony regarding his possession of a gun around the time of the robbery.  (Opp. Mem. at 6-8.)

"An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."

10

28 U.S.C. § 2254(b)(1)(A).  Prior to filing the instant
petition, during his direct appeal, Mr. Then was granted leave
by the Court of Appeals to file a supplemental appellate brief,
and he filed a *pro se* brief seeking to raise the issue of Ms.
Zavala's testimony regarding the gun.  (Opp. Aff. ¶ 11.)  The
Court of Appeals, after rejecting Mr. Then's argument about his
orange pants on the merits, found that his "remaining contention
was unpreserved for [the court's] review."  *Then*, 28 N.Y.3d at
1173.  According to Respondent, Mr. Then never argued against
the admission of Ms. Zavala's testimony regarding the gun at
trial.  (*See* Opp. Mem. at 7.)  Mr. Then did object to Ms.
Zavala's testimony regarding her observation of Mr. Then in
possession of a black Lexus following the robbery.  (May 17 Tr.
at 27.)

"New York courts consistently interpret [New York
Criminal Procedure Law] § 470.05(2) to require that a defendant
specify the grounds of alleged error in sufficient detail so
that the trial court may have a fair opportunity to rectify any
error."  *Garvey v. Duncan*, 485 F.3d 709, 715 (2d Cir. 2007).
Where a defendant fails to do so at trial, the issue cannot be
raised on appeal.  *Id.* at 715-16; *see also Murray v. Carrier*,
477 U.S. 478, 485-492 (1986) (finding that the failure to object
at trial under New York's contemporaneous objection rule is a
procedural bar to appeal); *Franco v. Walsh*, 73 F. App'x 517, 518

(2d Cir. 2003)(holding that an issue was unpreserved for appeal where there was no objection at trial); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (applying the contemporaneous objection rule as a procedural bar to federal *habeas* review).

Prior to the start of Mr. Then's trial, the prosecution sought to admit testimony regarding Mr. Then's possession of a black Lexus and of a gun, from both the police officers who arrested him and from Ms. Zavala, pursuant to New York evidentiary law. (*See* May 17 Tr. at 23-27.) Mr. Then's counsel opposed the admission of the police officer's testimony regarding the gun, because Mr. Then was previously acquitted of possessing the gun in a separate case, and because it was overly prejudicial. (*Id.* at 25.) Regarding Ms. Zavala's testimony, defense counsel argued that her proposed testimony that Mr. Then "was in possession of the car several days prior to the day of his arrest" was "also prejudicial." (*Id.* at 27.) However, defense counsel did not specifically oppose Ms. Zavala's testimony about Mr. Then's possession of the gun. The trial court held that testimony from the police officers and from Ms. Zavala regarding the gun was admissible under state law. (May 18 Tr. at 162-63.) During Ms. Zavala's testimony, Mr. Then's counsel did not object to the line of questioning regarding her witnessing him with a gun. (*See* Tr. at 104-05.)

The Court of Appeals did not elaborate on why it found Mr. Then's contention regarding Ms. Zavala's testimony unpreserved for review, but under New York law, "the trial court must be given a fair opportunity to rule on an issue of law before it can be raised on appeal." *Garvey*, 485 F.3d at 720. Mr. Then did not give the trial court such an opportunity with respect to Ms. Zavala's testimony about the gun, because his counsel never specifically opposed that testimony or objected to it.

Accordingly, Mr. Then's claim that the trial court erred by admitting Ms. Zavala's testimony regarding the gun is barred from federal *habeas* review. Nonetheless, in the interest of being comprehensive, the court will address the merits of both of Mr. Then's claims, even though only one was properly preserved.

## II. Ground One: Requirement to Wear Orange Prison Pants During First Day of Jury Selection

Mr. Then argues that under the Supreme Court's decision in *Estelle v. Williams*, his constitutional right to a fair trial was violated when he was forced to wear orange prison pants during the first day of jury selection, which lasted the afternoon of May 17, 2012. *See Estelle*, 425 U.S. 501, 512 (1976) ("[T]he State cannot, consistently with the Fourteenth

Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes[.]").

In *Estelle*, the defendant was arrested and, unable to post bail and denied a request for civilian clothes, forced to appear in court dressed in full prison attire throughout the course of his trial, until a guilty verdict was returned. *Id.* at 502-503. In holding that the defendant's constitutional rights were violated, the Supreme Court reasoned that "compelling an accused to wear jail clothing furthers no essential state policy," and "operates usually against only those who cannot post bail prior to trial." *Id.* at 505.

Mr. Then's case presents a different circumstance than that addressed in *Estelle* for two reasons. First, rather than being forced to wear full prison attire that would have been plainly visible, Mr. Then was required to wear only prison-issued pants, and the trial judge sought to seat him so that his pants were obstructed from view by potential jurors. Second, rather than being forced to wear prison clothing for the entirety of trial, Mr. Then was required to do so only for a half day of jury selection.

Just before jury selection began, the trial court noted for the record that Mr. Then was wearing "orange correctional pants," and a "black knitted top." (May 17 Tr. at 38.) The court also noted that Mr. Then was sitting "at the end

14

of a long table that [wa]s very wide," and that he was "the
furthest away possible from the prospective jurors," and it was
"not likely that unless they strained that they would be able to
see that he [was] wearing orange sweats." (*Id.*)  The record
does not indicate that any reference was made to Mr. Then's
pants in the presence of the prospective jurors, or that his
pants were visible.

Because the Court of Appeals rejected Mr. Then's
contention regarding the orange pants on the merits, this court,
in order to grant his petition, would have to find that the
state court's adjudication "resulted in a decision that was
contrary to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of
the United States"; or (2) "resulted in a decision that was
based on an unreasonable determination of the facts in light of
evidence presented in the State court proceeding."  28 U.S.C. §
2254(d).

Had Mr. Then been required to wear full prison
clothing for the entirety of trial, the Supreme Court's decision
in *Estelle* would clearly require that this court grant his
petition.  Had he been required to wear full prison clothing for
a portion of trial, the court would then be forced to grapple
with whether a clearly established constitutional right was
violated.  Neither circumstance occurred here.  Petitioner

15

relies on *United States v. Hurtado* (*see* Reply at 7-8), a case in which the Second Circuit held that a defendant forced to wear prison clothing on the first day of trial "should have been afforded a reasonable opportunity to procure street clothes in light of the potential prejudicial impact of his appearance in prison clothes." 47 F.3d 577, 581 (2d Cir. 1995). But in that case, the Second Circuit found the defendant's wearing of prison clothing to be harmless error, in part because the defendant "appeared in prison garb for only one day over the course of a week-long trial." *Id.* at 582. The court held that "the length of time [for which a defendant wears prison clothing] is a factor to be considered along with the strength of the evidence against the defendant." *Id.*

Here, Mr. Then was required to wear prison pants, which were concealed from view under a table, for only a portion of jury selection. Based on the record, the court cannot find that the state court's decision was an unreasonable application of federal law. This court is not aware of any controlling precedent establishing a rule that a defendant's constitutional rights are violated when he is required to wear prison clothing in such a limited circumstance, particularly when it appears that the clothing was concealed from the view of prospective jurors. When faced with a *habeas* petition from a defendant who was forced to wear shackles during trial, one court held that

16

"the complete lack of evidence in the record that Petitioner's shackles were visible to the jury [wa]s fatal to Petitioner's due process claim." *Andrade v. Martusello*, No. 12-cv-6399, 2015 WL 4154108, at *5 (S.D.N.Y. July 9, 2015).

Mr. Then asks this court to hold an evidentiary hearing to determine whether any of the prospective jurors actually were able to see his pants during that first day of jury selection.  (Reply at 29-31.)  He argues that the prospective jurors likely would have been able to see his pants when they were seated in the gallery of the courtroom, and that six of the jurors who were ultimately selected were present on that first day of jury selection.  (Pet. at 5.)  However, under *Hurtado*, even if the jurors saw his pants, the court would look to the length of time for which Mr. Then was required to wear the pants, which was quite brief, and the totality of the evidence against him, which was significant.  An employee at the dealership identified Mr. Then as the robber, police officers arrested him while he was in possession of the stolen Lexus, and Ms. Zavala testified that she saw him in possession of the vehicle before he was arrested.  Thus, the court finds that an evidentiary hearing is not warranted, because even if it were true that some jurors did in fact see his orange pants, despite the trial judge's effort to conceal them, this court still could not grant the petition.  *See Schriro v. Landrigan*, 550 U.S. 465,

475 (2007) ("District Court was well within its discretion to determine that, even with the benefit of an evidentiary hearing, [the petitioner] could not develop a factual record that would entitle him to *habeas* relief.").

There is no precedent, controlling or otherwise, establishing that a defendant is denied his constitutional rights in a situation analogous to Mr. Then's, and thus the state court's decision was not contrary to clearly established federal law.  Accordingly, in the absence of controlling law to the contrary, Mr. Then cannot make out a constitutional claim on the ground that he was required to wear orange pants for part of jury selection.  This ground for relief is, therefore, respectfully rejected.

### III. Ground Two: Admission of Ms. Zavala's Testimony Regarding the Gun

Mr. Then also urges this Court to grant his *habeas* petition on the ground that the testimony of his ex-girlfriend regarding his possession of a gun was improperly admitted by the trial judge.  (Pet. at 7.)  As discussed above, this claim is procedurally barred because Mr. Then's counsel did not specifically oppose it, and it was thus deemed unpreserved for review by the Court of Appeals.  Even if this claim were not procedurally barred, the claim would fail on the merits.

"[S]tate court evidentiary rulings are generally not a basis for *habeas* relief." *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012). Here, prior to trial, the trial court found that Ms. Zavala's testimony regarding the gun was admissible because it "establish[ed] [Petitioner's] identity to complete the narrative and to show that he had access to a weapon, thus, tending to establish his involvement in the charged crime." (May 18 Tr. at 163.) Mr. Then argues that he was acquitted in a separate case involving possession of the gun, and the trial court erred because it "still allowed the ex-girlfriend to testify that [P]etitioner possessed the gun that he had already been acquitted of possessi[ng] in the Bronx." (Pet. at 7-8.) But Ms. Zavala's testimony was not obviated merely because Petitioner was not convicted of possessing the gun. Whether or not the prosecution proved beyond a reasonable doubt in a separate case that Mr. Then possessed the gun in a manner that violated the law, his possession of a gun around the time of the robbery was relevant to whether he committed the robbery, and the trial court held that its relevance was not outweighed by the prejudicial effect.

There is no precedential case law suggesting that the admission of Ms. Zavala's testimony violated clearly established federal law. Though her testimony that Mr. Then was in possession of a gun similar to the one used during the charged

19

robbery was likely highly prejudicial, it was also clearly relevant, and trial courts are granted significant leeway under federal law to make admissibility determinations after balancing the probative value of the evidence against the potential for unfair prejudice. *See Davis v. Poole*, 767 F. Supp. 2d 409, 424 (W.D.N.Y. 2011) ("Whether under state or federal rules of evidence, the balancing of the prejudicial effect of certain evidence against its probative value is left to the sound discretion of the trial judge."); *see also United States v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010) (trial court has the "superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice"). This court finds no constitutional error with regard to the admission of Ms. Zavala's highly relevant testimony.

Accordingly, even if this ground for relief were not procedurally barred, the court would respectfully reject it on the merits.

### Conclusion

For the foregoing reasons, Mr. Then's Section 2254 petition is respectfully DENIED and dismissed in its entirety. Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003) (discussing certificate of appealability standard); Rules Governing Section 2254 and 2255 Cases, Rule 11 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

The Clerk of Court is directed to enter judgment in favor of Respondent, serve Mr. Then with a copy of this Memorandum and Order, the judgment, and an appeals packet, note service on the docket, and close this case.

**SO ORDERED.**

Dated:     Brooklyn, New York
           October 26, 2020

                              _____/s/__ _____ ___
                              Hon. Kiyo A. Matsumoto
                              United States District Judge